IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



TEVIN JERROD BREVARD,

    Plaintiff,

v.                                                           Civil Action No. 3:18CV840

JENNIFER JIMINEZ, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Tevin Jerrod Brevard, a Virginia inmate proceeding *pro se* and *in forma pauperis* filed this 42 U.S.C. § 1983 action. By Memorandum Order entered on April 26, 2019, the Court directed Plaintiff to file a Particularized Complaint. (ECF No. 18.) After receiving two extensions of time, Plaintiff filed a Particularized Complaint. (ECF No. 21.) The matter is now before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

### I.    PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally

construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte,* statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll,* 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. BREVARD'S ALLEGATIONS AND CLAIM

Brevard alleges that Defendants Jennifer Jiminez, an Officer in the Hampton Roads Regional Jail, David Hackworth, the Superintendent of the Jail, and A. Moore, Sheriff of Portsmouth, Virginia, subjected him to cruel and unusual punishment. (Part. Compl. 1.) Brevard's Particularized Complaint is rambling and repetitive and states as follows:[1]

> The Plaintiff, Mr. Tevin Brevard, was being detained at the Hampton Roads Regional Jail, in Portsmouth, Virginia, when an inmate known to hold waste in his cell flooded the tier out, causing waste water with the strong foul smell and fumes of urine, sewage, and waste to flood his tier, as well from the upper tier, running down to the lower floor.
> During the clean up there were two trustees performing the cleanup. For some strange reason, Officer Jennifer Jiminez started mopping as well, and when she reached the Plaintiff, Mr. Tevin Brevard's cell door, she began to act in an erratic matter, manner pushing sewage water into the Plaintiff's cell. Mr. Brevard told her that amount was so great that his feet, "bare" feet were covered and he [was] refused material to clean out the cell. Until allowed to be seen by medical, the next week after seeing internal affairs, the fumes causing brief dizziness, nausea, vomiting, by her forcing the sewage water in Plaintiff's cell, along with thoughts of suicide afterwards, then the very next day, she slammed his hand in the metal tray slot causing harm to the mentally challenge[d] victim inmate too.[2]

---

[1] The Court corrects the capitalization, spelling, spacing, and punctuation, and removes the emphasis in the quotations to the Complaint. In some instances, where a sentence is confusing as written, the Court changes the language to reflect what the Court believes Brevard intends to communicate.

[2] Brevard does not assert a claim based on this allegation. Brevard also fails to allege that any of the named Defendants were personally involved in the failure to provide him with cleaning supplies or medical care. To the extent that he alleges that Defendant Jiminez refused to provide him with cleaning supplies during or after the incident, as discussed below in Part III.B.1, he fails to state a claim for relief on his vague allegations.

3

Moreover, she verbal[ly] assaulted the inmate as well with provocation as the inmate choked. This being the normal treatment by some officers at Regional Jail. Then Mr. Brevard, after the internal affairs were seen[], by the Magistrate and swearing out a warrant and Officer (Ms.) Jiminez [was] charged with (misdemeanor) (assault) and P/R released to work only at an administrative capacity around the victim.

Officer Jiminez, after a guilty plea, pled guilty to the charges of assault on an inmate, and she was fined and ordered community service hours and ordered to write a letter of apology to Plaintiff.

Plaintiff now seeks $1 million dollars settlement due to exemplary and punitive damages towards the fully conceded wrongdoer whom pled guilty to willful misconduct of misdemeanor assault, due to Mr. Brevard's physical and emotional pain and additional mental anguish due to her, the Officer's actions and delay of medical attention, to the victim mentally challenged inmate, Mr. Brevard, at the H.R.R.J.

Claim (1) The Plaintiff avers that his Eighth Amendment Constitutional rights were violated to the point that triggers an act of cruel and unusual punishment by misdemeanor assault by [a] correctional officer at the Hampton Roads Regional Jail, namely Ms. Jennifer Jiminez, towards the victim.

The pro se Plaintiff states that the City of Portsmouth, Va. is where the Hampton Roads Regional Jail is and the Sheriff[3] of that City and the Jail's Superintendent, Mr. David Hackworth, and Officer Ms. Jennifer Jiminez is the liable parties to him, for the sum of $1 million dollars, under the doctrine of respondeat superior, simply because Officer Jiminez has pled guilty to the charges in the General District Court to the incident, she conceded, she can not now argue that she did not assault the inmate, and they are liable because Mr. Jiminez is employed by the Hampton Roads Regional Jail.

Wherefore the doctrine is requested to be invoked here because the doctrine acts to assure that the Plaintiff and his legal assistants will be paid in full amount of the requested $1-million dollar lawsuit.

. . . .

An entire week passed before the Plaintiff received medical examination. This added to Mr. Brevard's condition, when at times fearing to even drink water and towards his mental anguish and emotional pain.

Even though she was made by the judge to forward a letter of apology, this lawsuit is to also ensure that no one else has to suffer this type of humiliation that Mr. Brevard is still going through, and this Jail has a pattern of this conduct.

. . . .

The City of Portsmouth, Va. must be named in this lawsuit[4] because to continue, for this Regional Jail to operate after the Justice Department has reported

---

[3] Mr. M.A. Moore.

[4] Brevard was required to list all Defendants in the first paragraph of his Particularized Complaint. (ECF No. 13, at 2.) Brevard did not comply with that directive, but he did list the Defendants in the caption. Brevard not include the City of Portsmouth, Virginia, in his list of Defendants in the caption and the Court will not consider the City a Defendant for that reason.

4

> that the employees at the Jail are violating its inmates civil rights. This is knowledge.
>
> If Officer Jiminez were not guilty she wouldn't have pled guilty ... and she knows that Mr. Brevard by the strong smell would be spooked. ...
>
> And it clearly amounts to cruel and unusual punishment. ... It [has] all been corroborated, the Superintendent may try to down play what's taking place, but his officer pled guilty and Justice Department report found over (30) cases of abuse and civil rights violations of its inmates. ...

(Part. Compl. 3–7.) As recounted above, in his Particularized Complaint, Brevard only identifies one claim for relief buried in surplusage that has no bearing on the deprivation of Brevard's constitutional rights. Although Brevard desires an audience to air general grievances about conditions at the Hampton Roads Regional Jail, as discussed below Brevard may only pursue claims and seek relief where *his* constitutional rights have been violated. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (explaining that "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone does not warrant exercise of jurisdiction"). Moreover, Brevard has not been incarcerated in the Hampton Roads Regional Jail since early March of 2019. (See ECF Nos. 8–11.) Accordingly, the Court construes Brevard to raise the following claim for relief:

Claim One: Defendant Jiminez violated Brevard's Fourteenth Amendment rights[5] when she assaulted him by pushing dirty water into Brevard's cell, and Sheriff A. Moore and Superintendent David Hackworth are responsible for her conduct under a theory of *respondeat superior*.

---

Nevertheless, even if the Court considered the City of Portsmouth, Virginia as a Defendant, as explained in Part III.A, Brevard fails to show any policy or custom of the city denied him of a constitutional right.

[5] From Brevard's submissions, it is unclear whether he was a convicted felon at the time of the incident or a pre-trial detainee. Because he was ultimately transferred into the custody of the Virginia Department of Corrections, the Court assumes that Brevard was a pre-trial detainee at the time, and the Fourteenth Amendment, not the Eighth Amendment controls. *See Goodman v. Barber*, 539 F. App'x 87, 89 (4th Cir. 2013)

## III. ANALYSIS

### A. No Personal Liability

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citations omitted). To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted). "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (citing *Brzozowski v. Randall*, 281 F. Supp. 306, 312 (E.D. Pa. 1968)).

Although Brevard briefly mentions Defendants Sheriff A. Moore and Superintendent David Hackworth in the body of the Particularized Complaint, he fails to allege facts indicating that they were personally involved in the deprivation of his Eighth Amendment rights. Rather, Brevard specifically alleges that they should be held liable under a theory of *respondeat superior* simply based on their positions. (Part. Compl. 5.) Brevard's Particularized Complaint is

completely devoid of any facts that would plausibly suggest that Defendants Moore or Hackworth were personally involved in the incident where Defendant Jiminez pushed water into his cell.[6]

Brevard seemingly believes that Defendants Moore and Hackworth are liable to him simply because the Justice Department filed a report about the conditions at the Hampton Roads Regional Jail and because Defendant Jiminez pled guilty to misdemeanor assault in the General District Court. To the extent that Brevard intends to allege that these Defendants have somehow violated his rights based on an alleged municipal policy or custom, his claim is entirely frivolous. To state a claim against Defendants Moore and Hackworth on that theory, Brevard must allege facts showing that Moore and Hackworth deprived him of a constitutional right "through an official policy or custom." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). An unconstitutional official policy or custom

> can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Id.* (alteration in original) (quoting *Carter*, 164 F.3d at 217). Brevard does not identify an express policy, a decision, an omission, or a practice in which Moore or Hackworth engaged that denied

---

[6] To the extent that Brevard contends that Defendants Moore or Hackworth are somehow liable on a theory of supervisory liability, that claim would fail. To show that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show that:
> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted) (citations omitted). Brevard fails to demonstrate any one of these three factors.

him a constitutional right by virtue of any policy or practice. Rather, Brevard even admits that "this officer [was] not trained like that, this is the wrong approach to mental health care in the Jail[.]" (Part Compl. 7.) Thus, any claim against Defendants Moore or Hackworth on the basis of a policy or custom also fails to state a claim for relief.

Accordingly, any claims against Defendants Moore and Hackworth will be DISMISSED WITHOUT PREJUDICE.

### B. Fourteenth Amendment Violation

Brevard contends that Defendant Jiminez violated his rights under the Fourteenth Amendment when she pushed dirty water into his cell. To the extent that Brevard seeks to bring a constitutional claim for the infliction of cruel and unusual punishment by Defendants, as a detainee, such a claim is governed by the Fourteenth Amendment. *See Goodman v. Barber*, 539 F. App'x 87, 89 (4th Cir. 2013) (citation omitted). Under the Fourteenth Amendment standard, a plaintiff must show that the defendant "inflicted unnecessary and wanton pain and suffering upon the detainee." *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006) (citations omitted) (internal quotation marks omitted), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). "Due process requires that a pretrial detainee not be punished." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *see Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). "[N]ot every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin*, 849 F.2d at 870 (citation omitted). It is not entirely clear whether the alleged use of force should be evaluated as a claim for excessive force or as a challenge to Brevard's conditions of confinement. *See Majette v. Geo Grp., Inc.*, 3:07CV591, 2010 WL 3743364, at *5 (E.D. Va. Sept. 22, 2010). As explained below, Brevard, has alleged sufficiently a claim of unconstitutional conditions of confinement and a claim of excessive force to survive the screening stage.

8

## 1. Conditions of Confinement

The Fourteenth Amendment standard for evaluating challenges to conditions of confinement is the same as the Eighth Amendment analysis applicable to convicted prisoners. *See Brown v. Harris*, 240 F.3d 383, 388–89 (4th Cir. 2001) (holding deliberate indifference standard applies to detainees).[7] When a detainee challenges his conditions of confinement, he must allege facts plausibly suggesting, "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted) (citing *Wilson*, 501 U.S. at 301–03). The subjective prong of a deliberate indifference claim requires the plaintiff to allege that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his or her person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837; *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a

---

[7] The United States Court of Appeals for the Fourth Circuit has not addressed whether *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015), and its determination that excessive force claims for detainees must be analyzed solely under an objective standard extends to conditions of confinement claims for detainees.

plaintiff to allege plausibly that "the official in question subjectively recognized a substantial risk of harm" and "that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

Brevard indicates that Defendant Jiminez pushed dirty water into his cell while sweeping. He contends that Defendant Jiminez "knows that Mr. Brevard by the strong smell and sewage and urine would be spooked." (Part. Compl. 7.) Brevard also contends that his bare feet touched the water, and "that the fumes caus[ed] brief dizziness, nausea, vomiting, by her forcing the sewage water in Plaintiff's cell, along with thoughts of suicide afterwards." (Part. Compl. 3, 6.) At this juncture, it appears that Brevard has sufficiently alleged a claim of unconstitutional conditions of confinement to survive 28 U.S.C. § 1915.

### 2. Excessive Force

Under the Fourteenth Amendment standard, a plaintiff must allege facts indicating the defendant "inflicted unnecessary and wanton pain and suffering upon the detainee." *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006) (citations omitted) (internal quotation marks omitted), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). A detainee may prevail by "providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473–74 (2015) (citations omitted).[8] Factors a court may consider to determine whether force was objectively unreasonable may include

> the relationship between the need for the use of force and the amount of force used; the extent of [the detainee's] injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat

---

[8] In *Kingsley*, the Supreme Court determined that the appropriate standard for the Fourteenth Amendment is "only that the officers' use of that force was *objectively* unreasonable," not that "the officers were *subjectively* aware that their use of force was unreasonable . . . ." 135 S. Ct. at 2470.

10

reasonably perceived by the officer; and whether the [detainee] was actively resisting.

*Id.* at 2473 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Because "officers facing disturbances 'are often forced to make split-second judgments' . . . . a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Id.* at 2474 (citing *Graham*, 490 U.S. at 397). The Court must recognize that "agents of the state are permitted to exercise a certain degree of force in order to protect the interests of society." *Sawyer v. Asbury*, 537 F. App'x 283, 294 (4th Cir. 2013) (quoting *Justice v. Dennis*, 834 F.2d 380, 382 (4th Cir. 1987), *vacated on other grounds by* 490 U.S. 1087 (1989)). Thus, not every "push or shove, even if it may later seem unnecessary" is serious enough to rise to the level of a constitutional violation. *Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008) (quoting *Graham*, 490 U.S. at 396), *abrogated on other grounds by Wilkins*, 559 U.S. 34. Consequently, the Court "must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough.'" *Scarbro v. New Hanover Cty.*, 374 F. App'x 366, 370 (4th Cir. 2010) (quoting *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999)). In addition, the determination of whether an officer used excessive force must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 135 S. Ct. at 2473.

It is unclear from Brevard's vague allegations whether Defendant Jiminez intentionally pushed dirty water directly into Brevard's cell or whether she was cleaning up the water without regard for whether it entered his cell. Assuming solely for the sake of the current screening posture, Defendant Jiminez intentionally pushed the water into Brevard's cell and her conduct was taken with the express intent to punish, *see Martin*, 849 F.2d at 870, not "every malevolent touch

by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see Orem*, 523 F.3d at 447; *Carson v. Mulvihill*, 488 F. App'x 554, 562 (3d Cir. 2012) (explaining that officer's actions in forcing inmate into cell by "launch[ing]" wheelchair through cell door and into steel bed "causing [inmate] to fall sharply onto his bed inside the door," was "at most, a malevolent shove" and not excessive force). At this juncture, it appears that Brevard has sufficiently alleged a claim of excessive force against Defendant Jiminez to survive 28 U.S.C. § 1915.

### III. CONCLUSION

For the foregoing reasons, Brevard's claims against Defendants Hackworth and Moore are DISMISSED. The Court will continue to process the conditions of confinement and excessive force claim against Defendant Jiminez.

An appropriate Order will accompany this Memorandum Opinion.

Date: 29 October 2019
Richmond, Virginia

/s/ 
John A. Gibney, Jr.
United States District Judge

12